UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

GORDON TARRANT,

                Plaintiff,

      -against-

CITY OF MOUNT VERNON, et al.,

                Defendants.

**MEMORANDUM OPINION
AND ORDER**

20-CV-09004 (PMH)

PHILIP M. HALPERN, United States District Judge:

Gordon Tarrant ("Plaintiff"), presently proceeding *pro se*, initiated this action under 42 U.S.C. § 1983 and New York State law on November 9, 2020.[1] (Doc. 9). Plaintiff maintains in his Second Amended Complaint ("SAC"), the operative pleading, that his constitutional rights were violated during an April 26, 2018 arrest and related prosecutions. (*See* Doc. 34, "SAC"). Plaintiff presses, based on those events, seven claims for relief against one or more of seventeen known and unknown Defendants. (*Id*. ¶¶ 88-123).

Pending presently is a motion to dismiss this action filed by: (1) the County of Westchester ("County"); (2) the Westchester County District Attorney's Office ("WCDAO"); (3) former Westchester County District Attorney Anthony A. Scarpino, Jr. ("DA Scarpino"); (4) Assistant District Attorney John C. Thomas ("ADA Thomas"); (5) Assistant District Attorney Patrick Marcarchuk ("ADA Marcarchuk"); (6) Assistant District Attorney Elizabeth J. Knowlton ("ADA Knowlton"); (7) Assistant District Attorney Catalina Blanco Buitrago ("ADA Buitrago"); and (8) Assistant District Attorney Maria I. Wager ("ADA Wager," and collectively, "County Defendants"). The County Defendants seek dismissal of this action, in its entirety, as against them.

---

[1] Plaintiff was represented until his counsel was granted leave to withdraw from representation on April 30, 2021. (Doc. 54). Notwithstanding attempts to retain new counsel, Plaintiff proceeds *pro se*.

The County Defendants filed their motion to dismiss on June 14, 2021. (Doc. 65; Doc. 67, "Def. Br.").[2] Plaintiff opposed the motion by memorandum of law—prepared with the assistance of the New York Legal Assistance Group's Legal Clinic for Pro Se Litigants in the SDNY—filed on July 30, 2021 (Doc. 76, "Opp."), and the motion was briefed fully with the filing of the County Defendants' reply memorandum of law in further support of their motion on August 2, 2021 (Doc. 77, "Reply Br.").

For the reasons set forth below, the County Defendants' motion to dismiss is GRANTED.

---

[2] On a Rule 12(b)(6) motion, "the Court is entitled to consider facts alleged in the complaint and documents attached to it or incorporated in it by reference, documents 'integral' to the complaint and relied upon in it, and facts of which judicial notice may properly be taken under Rule 201 of the Federal Rules of Evidence." *Heckman v. Town of Hempstead*, 568 F. App'x 41, 43 (2d Cir. 2014); *see also Manley v. Utzinger*, No. 10-CV-02210, 2011 WL 2947008, at *1 n.1 (S.D.N.Y. July 21, 2011) ("The Court may consider any written instrument attached to the complaint, statements or documents incorporated into the complaint by reference, and documents possessed by or known to the plaintiff and upon which the plaintiff relied in bringing the suit."). Still, "[w]here an extrinsic document is not incorporated by reference, the district court may nevertheless consider it if the complaint relies heavily upon its terms and effect, which renders the document integral to the complaint." *Schafer v. Direct Energy Servs., LLC*, 845 F. App'x 81, 82 (2d Cir. 2021) (internal quotation marks omitted). Here, the County Defendants filed a declaration providing sixteen exhibits for the Court's consideration. (*See* Doc. 66, "Carey Decl."). Of the sixteen documents submitted, the Court considers only three: (1) the Misdemeanor Information, sworn to on July 7, 2017 in Dkt. No. 17-1817 in the Mount Vernon City Court (Doc. 66-12, "Carey Ex. L"); (2) the Bench Warrant issued in Dkt. No. 17-1817 in Mount Vernon City Court (Doc. 66-13, "Carey Ex. M"); and (3) the Certificate of Disposition in Dkt. No. 17-1817 in Mount Vernon City Court (Doc. 66-16, "Carey Ex. P"). Given the gravamen of Plaintiff's allegations (i.e., false arrest), the Court considers these documents properly at this juncture. *Llanes v. New York*, No. 18-CV-03537, 2019 WL 4889258, at *3 (E.D.N.Y. Sept. 30, 2019) (taking judicial notice, on a motion to dismiss claims of false arrest and malicious prosecution, of "the three misdemeanor informations charging Plaintiff with various crimes, the court paperwork, the 730 evaluation paperwork, jail paperwork, and medical paperwork" on a motion to dismiss); *Gaston v. Ruiz*, No. 17-CV-01252, 2018 WL 3336448, at *3 (E.D.N.Y. July 6, 2018) (concluding, on a motion to dismiss a false arrest case, that "the court takes judicial notice of the Bench Warrant, the OLPA Report, and the certificate of disposition. It is well established that these documents are matters of public record and, as such, the court may consider them on a motion to dismiss."); *Rankel v. Town of Somers*, 999 F. Supp. 2d 527, 538 (S.D.N.Y. 2014) ("I will consider the Certificate of Disposition, Stipulation of Settlement, and Justice Court decision; they are matters of public record of which I may take judicial notice for the fact of what is said." (internal citations omitted)); *Guerrier v. Quillian*, No. 10-CV-09453, 2011 WL 4916295, at *3 (S.D.N.Y. Oct. 14, 2011) ("Guerrier has alleged that he was arrested in August 2007 pursuant to a bench warrant. Defendants have provided the Court with a copy of this bench warrant attached to their motion papers, and the Court takes judicial notice of it."). As for the other documents submitted by the County Defendants, the Court need not and does not consider them.

## BACKGROUND

Plaintiff and his father share the same name. (SAC ¶ 58). The purported confusion around that fact—and Plaintiff's identity in general, according to Plaintiff—is central to understanding the allegations herein.

I.   Plaintiff's Public Possession of Marijuana on July 4, 2017

Officer Patrick King ("King") of the Mount Vernon Police Department ("MVPD") observed Plaintiff, on or about July 4, 2017, with marijuana on the street in Mount Vernon. (SAC ¶ 62 (insisting that prosecutors knew Plaintiff was the proper defendant for this event), ¶ 67 (conceding that King encountered Plaintiff in connection with the "July 4, 2017 . . . minor marijuana drug charge"); Carey Ex. L; Opp. Br. at 6 (admitting that King arrested Plaintiff after seeing Plaintiff "rolling a joint"); *but see* SAC ¶ 61 (suggesting that King's interaction was with Plaintiff's father on July 4, 2017)).

King swore out an associated Misdemeanor Information, Dkt. No. 17-1817, in the Mount Vernon City Court charging Plaintiff with: (1) Criminal Possession of Marijuana in the Fifth Degree, N.Y. Penal Law § 221.10(1); and (2) Unlawful Possession of Marijuana, N.Y. Penal Law § 221.05, shortly thereafter. (Carey Ex. L; *see also* SAC ¶¶ 61-62). That filing claimed that Plaintiff's address was 14 Amsterdam Place, Apt. C24, Mount Vernon, New York, and that his birthdate was September 1, 1977. (Carey Decl. Ex. L). That is incorrect and appears to be an amalgamation of Plaintiff's address and birthdate (i.e., 616 East Lincoln Street, Apt. C24, Mount Vernon, New York; February 17, 1977) and his father's address and birthdate (i.e., 14 Amsterdam Place, Apt. 3E, Mount Vernon, New York; September 1, 1957).[3] (SAC ¶¶ 37, 61-62).

---

[3] Although it has no bearing on the Court's analysis, a Decision and Order issued by Judge Adrian N. Armstrong of the Mount Vernon City Court concludes that Plaintiff knowingly gave law enforcement the wrong birthdate. (*See* Doc. 66-15 at 2-3).

Presumably, given the confusion over identity, Plaintiff says that his father was arraigned in Dkt. No. 17-1817 on July 13, 2017 and pled not guilty. (*Id*. ¶ 62). Plaintiff avers that ADA Thomas "prosecute[d] the case knowing that Gordon Tarrant DOB 9/1/57 was the wrong defendant and that . . . [Plaintiff] was never brought in or properly charged." (*Id*.).[4]

Neither Plaintiff nor his father to appeared at the next court appearance, July 20, 2017, so a bench warrant was issued in Dkt. No. 17-1817. (*Id*. ¶ 63; *see also* Opp. at 3; Carey Ex. M).

II.   Sale of Crack Cocaine on November 8, 2017

Following the events of July 2017, King and an unknown MVPD undercover officer accused Plaintiff of selling "a twist of crack-cocaine to the undercover officer for $20" on November 8, 2017. (SAC ¶ 39). According to Plaintiff, he was:

> falsely arrested stemming from an incident that occurred on November 8, 2017 at approximately 1:42 pm at South 1ˢᵗ Avenue in Mount Vernon, New York based on the allegations of Detective Patrick King and an undercover officer of the MVPD. . . . Plaintiff was indicted on November 8, 2018. The Indictment was filed on the same day.

(*Id*. ¶ 38). Notwithstanding the indictment, charges associated with the November 8, 2017 event were dismissed because the undercover officer could not identify Plaintiff. (*Id*. ¶¶ 39, 66, 82).

III.   Plaintiff's Arrest on April 26, 2018

At approximately 6:00 a.m. on April 26, 2018—months after the events outlined above— as Plaintiff was drinking coffee and watching the news inside his apartment in Mount Vernon, New York, he heard a loud pounding at the front door. (*Id*. ¶¶ 37, 40-41). Plaintiff approached the door, "pe[e]ked out," and saw an unspecified number of police officers in the hallway. (*Id*. ¶ 43). One or more unidentified officer(s) directed Plaintiff to "open the door" and identified themselves

---

[4] Plaintiff insists that ADA Marcarchuk also "appeared on July 13, 2017 and filed a Misdemeanor Complaint/Information . . . against the wrong Gordon Tarrant." (SAC ¶ 62). It is unclear if it was the same document prepared by King.

as "parole, probation, and pardon" operatives. (*Id.*). As Plaintiff was on neither parole nor probation, he refused to open the door and called 911. (*Id.* ¶¶ 44-45). While law enforcement pounded on the front door, Plaintiff spoke with "911 operators and requested the County Police." (*Id.* ¶ 46). During this telephone call, an unidentified person told Plaintiff "that one of the officers in the hall was with the County Police." (*Id.*). Plaintiff insists that he "was informed by the [Westchester County Department of Public Safety], through his 911 call, that the representative would stay on the phone and walk him through the process." (*Id.* ¶ 47; *see also* Opp. Br. at 4 (maintaining that somebody "convinced [Plaintiff] to open the door because a county officer was present")).

When Plaintiff opened the front door, unspecified officers ordered him to put the phone down, forced him against a wall, and handcuffed him. (SAC ¶¶ 48-49). Plaintiff asked one or more unspecified individual(s) to see a warrant for his arrest; none was produced. (*Id.* ¶¶ 50, 52, 75).

After being handcuffed, unspecified officers "forced Plaintiff's family into back rooms while they searched Plaintiff's apartment." (*Id.* ¶ 51). Three officers remained outside the apartment: (1) MVPD Sergeant Stewart; (2) MVPD Detective Puff; and (3) an unknown John Doe associated with the Westchester County Department of Public Safety ("County John Doe"). (*Id.* ¶¶ 53-54). [5] After being searched twice by one or more unspecified officers, Plaintiff was transported to the MVPD. (*Id.* ¶¶ 55-56). It was at the MVPD that Plaintiff learned from MVPD Detective Camilo Antonini that he had been arrested for: (1) Bail Jumping in the Third Degree,

---

[5] Plaintiff proceeds against three unknown individuals named in the caption as "John Does #1-3." (*See* SAC). Plaintiff's identification of these individuals is, at best, unclear; on the one hand, Plaintiff pled that these individuals are employees of both MVPD and the County, while on the other hand, he pled also that they are employees of just one of those entities. (*See id.* ¶¶ 25, 27, 29, 103). The Court, in construing the SAC in Plaintiff's favor, reads the pleading to suggest that only one of the John Does was employed by the County; the other two were employed by the MVPD. (*See id.* ¶¶ 46 (alleging that "one of the officers in the hall" was employed by the Westchester County Department of Public Safety), 54 (claiming that "a county police officer was one of the officers outside . . . as a member of a purported joint task force")).

N.Y. Penal Law § 215.55; (2) Criminal Possession of a Controlled Substance in the Seventh Degree, N.Y. Penal Law § 220.03; and (3) Criminal Sale of a Controlled Substance in the Third Degree, N.Y. Penal Law § 220.16. (*Id*. ¶ 56).

IV.   Prosecution and Resolution

Following his arrest, Plaintiff insists that it became apparent that law enforcement arrested the wrong individual in connection with the November 8, 2017 event. At every court appearance— more than twenty, in all—Plaintiff professed his innocence and refused prosecutors' plea offers. (*Id*. ¶¶ 60, 68-69). According to Plaintiff, throughout the prosecution, DA Scarpino tried to pressure Plaintiff into pleading guilty to charges associated with the November 8, 2017 event and prosecutors generally abdicated their "obligation to thoroughly investigate" the attendant charges. (*Id*. ¶¶ 68-71). Plaintiff pled guilty in Mount Vernon City Court on January 28, 2019 to a charge of Disorderly Conduct, N.Y. Penal Law § 240.20(7), in satisfaction of Dkt. No. 17-1817 (i.e., that associated with the July 4, 2017 marijuana incident). (Carey Ex. P; Opp. Br. at 6-7 (admitting that "[o]n January 28, 2019, Plaintiff pl[ed] guilty on docket 17-1817 to disorderly conduct . . . .")). Approximately four months later, in May 2019, ADA Buitrago moved to dismiss the charges connected to the November 8, 2017 event. (*Id*. ¶ 70).

This litigation followed.

**STANDARD OF REVIEW**

A Rule 12(b)(6) motion enables a court to dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is plausible on its face "when the plaintiff pleads

factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. (citing *Twombly*, 550 U.S. at 556). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id*. (quoting *Twombly*, 550 U.S. at 556). The factual allegations pled "must be enough to raise a right to relief above the speculative level . . . ." *Twombly*, 550 U.S. at 555.

"When there are well-ple[d] factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Iqbal*, 556 U.S. at 679. Thus, the Court must "take all well-ple[d] factual allegations as true, and all reasonable inferences are drawn and viewed in a light most favorable to the plaintiff[]." *Leeds v. Meltz*, 85 F.3d 51, 53 (2d Cir. 1996). The presumption of truth, however, "'is inapplicable to legal conclusions,' and '[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.'" *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009) (quoting *Iqbal*, 556 U.S. at 678 (alteration in original)). Therefore, a plaintiff must provide "more than labels and conclusions" to show entitlement to relief. *Twombly*, 550 U.S. at 555.

A complaint submitted by a *pro se* plaintiff, "however inartfully ple[d], must be held to less stringent standards than formal pleadings drafted by lawyers . . . ." *Estelle v. Gamble*, 429 U.S. 97, 106 (1976) (internal quotation marks omitted). Because *pro se* plaintiffs "'are often unfamiliar with the formalities of pleading requirements,' courts must 'apply a more flexible standard in determining the sufficiency of a *pro se* [complaint] than they would in reviewing a pleading submitted by counsel.'" *Smith v. U.S. Dep't of Just.*, 218 F. Supp. 2d 357, 361 (W.D.N.Y. 2002) (quoting *Platsky v. Cent. Intell. Agency*, 953 F.2d 26, 28 (2d Cir. 1991)). However, while "[p]*ro se* complaints are held to less stringent standards than those drafted by lawyers, even following *Twombly* and *Iqbal*," dismissal is "appropriate where a plaintiff has clearly failed to

meet minimum pleading requirements." *Thomas v. Westchester Cty.*, No. 12-CV-06718, 2013 WL 3357171, at *2 (S.D.N.Y. July 3, 2013) (internal citations omitted); *see also Chavis v. Chappius*, 618 F.3d 162, 170 (2d Cir. 2010) ("Even in a *pro se* case . . . although a court must accept as true all of the allegations contained in a complaint, that tenet is inapplicable to legal conclusions, and threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." (internal quotation marks omitted)). Therefore, while the Court must "draw the most favorable inferences that [a plaintiff's] complaint supports, [it] cannot invent factual allegations that [a plaintiff] has not pled." *Chappius*, 618 F.3d at 170. The Court does, however, have a duty to interpret "the pleadings of a *pro se* plaintiff liberally and interpret them 'to raise the strongest arguments that they suggest.'" *McPherson v. Coombe*, 174 F.3d 276, 280 (2d Cir. 1999) (quoting *Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir. 1994)).

Here, however, while Plaintiff proceeds *pro se* now, the SAC was drafted and filed by counsel. As such, "it would be 'fundamentally unfair' to extend the special solicitude typically afforded *pro se* parties to" the SAC. *Meng v. Xinhuanet Co.*, No. 16-CV-06127, 2017 WL 3175609, at *2 (S.D.N.Y. July 25, 2017) (quoting *Simpson v. Wells Fargo Bank*, No. 15-CV-01487, 2016 WL 393544, at *2 (S.D.N.Y. Feb. 1, 2016)). Still, although the SAC "need not be given the liberal reading normally afforded to a *pro se* party, the ruling of this Court would not change if the Court [were to] give[] it such a reading." *Id*. Under any standard, the SAC simply fails to state any claim against the County Defendants.

## ANALYSIS

Prior to engaging in the substantive analysis, it bears noting that the SAC is generally unclear as to what claims for relief are pressed against which of the seventeen Defendants. (*See* SAC ¶¶ 88-123). Construing the SAC in Plaintiff's favor, it appears that five of the seven claims

for relief (i.e., claims one through five) could be considered claims against one or more of the County Defendants: (1) a broad claim complaining of unreasonable search and seizure, violation of due process, false arrest, and failure to intervene under 42 U.S.C. § 1983; (2) a second claim for false arrest under 42 U.S.C. § 1983 and New York State law; (3) malicious prosecution under 42 U.S.C. § 1983; (4) conspiracy to violate Plaintiff's constitutional rights under 42 U.S.C. § 1983; and (5) municipal liability under 42 U.S.C. § 1983. (*Id.* ¶¶ 88-110).

It is with this interpretation of the SAC that the Court performs its analysis.

I.   <u>Plaintiff's Failure to Respond to the County Defendants' Arguments</u>

As a fundamental issue, the Court notes that Plaintiff offers not a single sentence—in a memorandum prepared with the assistance of counsel—opposing any substantive argument that the County Defendants advanced in support of their motion to dismiss. (*Compare* Def. Br., *with* Opp.). The Court therefore concludes that when Plaintiff wrote in his opposition brief that he "d[id] not object to . . . the County of Westchester being dismissed from the suit," either he meant that he did not oppose dismissing the County Defendants from this case in their entirety (Opp. at 1 n.2); or Plaintiff chose consciously, by his silence, to waive and abandon any argument he could have made with respect to the County Defendants. *See, e.g.*, *Ventillo v. Falco*, No. 19-CV-03664, 2020 WL 7496294, at *12 (S.D.N.Y. Dec. 18, 2020) (explaining that where a plaintiff fails to respond to a defendant's argument on a motion to dismiss, the point is conceded); *see also Felske v. Hirschmann*, No. 10-CV-08899, 2012 WL 716632, at *3 (S.D.N.Y. Mar. 1, 2012) ("A plaintiff effectively concedes a defendant's arguments by his failure to respond to them."). Either way, Plaintiff has chosen not to oppose the County Defendants' motion.

The Court has, in any event, reviewed the substance of the County Defendants' arguments and concludes that dismissal is proper on the merits of the arguments advanced.

II.   Claims Against the WCDAO

Although the County Defendants did not raise the issue, it is blackletter law that the WCDAO is an entity that cannot be sued; nothing can change that fact. *See, e.g.*, *Mees v. City of New York*, No. 19-CV-07346, 2021 WL 1164300, at *2 n.1 (S.D.N.Y. Mar. 25, 2021) ("Dr. Mees also named the District Attorney's Office as a defendant, but it is not a suable entity." (citing *Woodward v. Off. of Dist. Att'y*, 689 F. Supp. 2d 655, 658 (S.D.N.Y. 2010)); *Miller v. Nassau Cty. Dist. Attorney's Off.*, No. 09-CV-02819, 2009 WL 5218606, at *3 (E.D.N.Y. Dec. 28, 2009) ("Plaintiff names the Nassau County District Attorney's Office as a Defendant. Because the District Attorney's Office is not an entity capable of being sued, the Court DISMISSES with prejudice the Complaint against the District Attorney's Office."); *Conte v. Cty. of Nassau*, No. 06-CV-04746, 2008 WL 905879, at *1 n.2 (E.D.N.Y. Mar. 31, 2008); *see also Feingold v. Hankin*, 269 F. Supp. 2d 268, 275 (S.D.N.Y. 2003) (noting that Westchester Community College "has no juridical existence other than as a department of the County").

The WCDAO is therefore dismissed by the Court, *sua sponte*, from this action. *Cf.  Mabb v. Town of Saugerties*, No. 18-CV-00866, 2020 WL 210313, at *4 (N.D.N.Y. Jan. 14, 2020).

III.   Claims Against the County

Under *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658 (1978) and its progeny, a municipality may be held liable where a plaintiff's constitutional rights were violated because of a municipal policy or custom. *See Jimenez v. City of New York*, No. 18-CV-07273, 2020 WL 1467371, at *3 (S.D.N.Y. Mar. 26, 2020) ("Plaintiff must plead allegations that 'the government body *itself* subjects a person to a deprivation of rights or causes a person to be subjected to such deprivation.'" (quoting *Connick v. Thompson*, 563 U.S. 51, 60 (2011) (emphasis in original))). "[T]o prevail on a claim against a municipality under section 1983 based on acts of

10

a public official, a plaintiff is required to prove: (1) actions taken under color of law; (2) deprivation of a constitutional or statutory right; (3) causation; (4) damages; and (5) that an official policy of the municipality caused the injury." *Lockett v. City of Middletown*, No. 19-CV-08255, 2021 WL 1092357, at *5 (S.D.N.Y. Mar. 22, 2021) (quoting *Triano v. Town of Harrison, New York*, 895 F. Supp. 2d 526, 531 (S.D.N.Y. 2012) (alteration in original)). Such a claim "cannot lie in the absence of an underlying constitutional violation." *Galgano v. Cty. of Putnam*, No. 16-CV-03572, 2020 WL 3618512, at *9 (S.D.N.Y. July 2, 2020) (quoting *DeRaffele v. City of New Rochelle*, No. 15-CV-00282, 2017 WL 2560008, at *6 (S.D.N.Y. June 13, 2017)).

The County Defendants sought dismissal of the claim against the County itself (i.e., the *Monell* claim). (*See* Def. Br. at 13-14). Plaintiff stated, in opposition, that he did not oppose the County's dismissal. (Opp. at 1 n.2). The claims against the County are, consequently, dismissed. *See, e.g.*, *Lewis v. Annucci*, No. 16-CV-10048, 2018 WL 1281832, at *1 n.2 (S.D.N.Y. Mar. 2, 2018); *Riley v. Roycroft*, No. 16-CV-02227, 2017 WL 782917, at *1 n.1 (S.D.N.Y. Feb. 28, 2017) ("In his opposition brief, plaintiff voluntarily withdrew his claims against Hinton. Those claims are accordingly dismissed."); *Burns v. Griffin*, No. 16-CV-00782, 2016 WL 7015751, at *2 (S.D.N.Y. Nov. 29, 2016).[6]

---

[6] Claims against municipalities are duplicative of claims for relief against municipal employees in their official capacities. *See, e.g.*, *Jackson v. Cty. of Erie*, No. 17-CV-00396, 2020 WL 5642277, at *4 (W.D.N.Y. Sept. 22, 2020); *Taylor v. NYC*, No. 20-CV-05036, 2020 WL 4369602, at *3 (S.D.N.Y. July 30, 2020); *Sandoz v. Doe*, No. 17-CV-05447, 2020 WL 3318262, at *9 (S.D.N.Y. June 18, 2020). Plaintiff did not specify here whether he proceeded against DA Scarpino and ADAs Thomas, Marcarchuk, Knowlton, Buitrago, and Wager in their official or individual capacities. (*See generally* SAC). The Court therefore assumes that these individuals are named in their individual capacities, only. *See Kravstov v. Town of Greenburgh*, No. 10-CV-03142, 2012 WL 2719663, at *24 (S.D.N.Y. July 9, 2012); *see also Davis v. Cty. of Nassau*, 355 F. Supp. 2d 668, 675-76 (E.D.N.Y. 2005). The Court notes moreover that, if it were to consider the County's motion to dismiss the *Monell* claim on its merits, it would grant the motion and dismiss the claim for relief as conclusory and lacking any factual basis. *See, e.g.*, *Lockett*, 2021 WL 1092357, at *5 n.8 (observing that, even if the plaintiff pled a constitutional violation, "the claim for relief would nevertheless fail for lack of facts supporting the existence of a municipal policy or practice"); *Windley v. Westchester Cty.*, No. 19-CV-04858, 2021 WL 276542, at *4 (S.D.N.Y. Jan. 27, 2021).

IV.   <u>Claims Against DA Scarpino and the ADAs</u>

Of the five claims for relief advanced against the County Defendants, two of them—the claims for malicious prosecution and conspiracy to coverup the violation of constitutional rights under 42 U.S.C. § 1983—can be construed as claims for relief against DA Scarpino and ADAs Thomas, Marcarchuk, Knowlton, Buitrago, and Wager (collectively, "DA Defendants"). (*See* SAC ¶¶ 102-110).[7] The DA Defendants argue that the claims against them must be dismissed under the affirmative defense of absolute immunity. (*See* Def. Br. at 12-13). The Court agrees.

"[A]bsolute immunity is an affirmative defense whose availability depends on the nature of the function being performed by the defendant official who is alleged to have engaged in the challenged conduct," and when the defendant's conduct is "clear from the face of the complaint," the affirmative defense may be resolved on a Rule 12(b)(6) motion. *Shmueli v. City of New York*, 424 F.3d 231, 236 (2d Cir. 2005) (internal citations omitted)). As relevant here, "[s]tate prosecutors are entitled to absolute immunity for that conduct 'intimately associated with the judicial phase of the criminal process.'" *Hill v. City of New York*, 45 F.3d 653, 660-61 (2d Cir. 1995) (quoting *Imbler v. Pachtman*, 424 U.S. 409, 430 (1976)); *see also Marom v. Town of Greenburgh*, No. 20-CV-03486, 2021 WL 797648, at *5 (S.D.N.Y. Mar. 2, 2021); *Bey v. Nugent*, No. 18-CV-07878,

---

[7] Two of the five claims for relief—the broad claim seeking redress under 42 U.S.C. § 1983 and the one complaining of false arrest under 42 U.S.C. § 1983 and New York State law—are presented in such a way that they could be read to proceed against the DA Defendants. (*See* SAC ¶¶ 88-92, 98-101 (accusing "Defendants" collectively)). The Court does not, however, interpret these claims to proceed against the DA Defendants because, if they did, there is no factual predicate to infer that the DA Defendants were involved before the judicial phase of the criminal proceedings. (*See generally* SAC). Therefore, even if these two claims were read in that liberal manner, they could not survive. *See Tangreti v. Bachmann*, 983 F.3d 609, 618 (2d Cir. 2020) (explaining that, in order to state a claim under 42 U.S.C. § 1983 against an individual, the facts must establish that the "defendant, through the official's own individual actions, has violated the Constitution" (internal quotation marks omitted)); *Willis v. Rochester Police Dep't*, No. 15-CV-06284, 2018 WL 4637378, at *3 (W.D.N.Y. Sept. 27, 2018) ("To the extent that Plaintiff sought to assert his false arrest claim against A.D.A. Clark or D.A. Doorley, his Amended Complaint includes no facts to suggest that either was involved in his confinement . . . . Accordingly, if Plaintiff intended to assert a false arrest claim against A.D.A. Clark or D.A. Doorley, such a claim fails.").

2020 WL 6530917, at *5 (S.D.N.Y. June 3, 2020), *adopted by* 2020 WL 4731419 (S.D.N.Y. Aug. 14, 2020). This immunity can be abrogated, however, where a prosecutor performs "administrative duties and those investigatory functions that do not relate to an advocate's preparation for the initiation of a prosecution or for judicial proceedings." *Simon v. City of New York*, 727 F.3d 167, 172 (2d Cir. 2013) (quoting *Buckley v. Fitzsimmons*, 509 U.S. 259, 273 (1993)). In deciding whether absolute immunity attaches, the Second Circuit has advised that:

> [i]nstead of relying on strict categories of actions with respect to which absolute immunity attaches, the relevant question is whether there is pending or in preparation a court proceeding in which the prosecutor acts as an advocate. Ultimately, we ask whether a reasonable prosecutor would view the acts challenged by the complaint as reasonably within the functions of the prosecutor.

*Ogunkoya v. Monaghan*, 913 F.3d 64, 69 (2d Cir. 2019) (internal citations and quotation marks omitted).

As is clear from the face of the SAC, the DA Defendants are entitled to absolute immunity because Plaintiff's issues with their conduct—to the extent that these individuals are mentioned in the pleading—arise from actions taken during the prosecution. (*See* SAC ¶¶ 62, 67-72, 79, 81-86). There is no suggestion that the DA Defendants were involved in the arrest, the search, or any conduct except that intimately associated with the judicial phase of the criminal process—and it is their *refusal* to stretch beyond that conduct into investigation or administration that forms the basis of Plaintiff's claims for relief against them. (*Id*. ¶¶ 68 (alleging that the DA Defendants violated Plaintiff's constitutional rights because they were "[e]ach . . . under the obligation to thoroughly investigate . . . and failed to do so"), 71 (complaining that prosecutors "failed to investigate the charges leading to Plaintiff's arrest")).

Because the DA Defendants are entitled to absolute immunity, the claims for relief against them are dismissed. *See, e.g.*, *Klein v. Zugabie*, No. 20-1975-CV, 2021 WL 5313708, at *2 (2d

Cir. Nov. 16, 2021) (affirming immunity dismissal where allegations concerned prosecutor's "conduct during the prosecutorial phase of the criminal process"); *Kravtchouk v. City of New York*, No. 16-CV-04787, 2019 WL 4918083, at *5 (E.D.N.Y. Sept. 30, 2019) ("Palvia is thus entitled to absolute immunity from suit in her individual capacity for Kravtchouk's false arrest, malicious prosecution, § 1983, and § 1985 actions."); *Klein v. Beltempo*, No. 15-CV-09093, 2018 WL 4284317, at *6 (S.D.N.Y. Sept. 7, 2018) ("[T]he prosecutorial nature of Defendant Parietti's actions . . . is clear from the face of the complaint, and absolute immunity applies."); *Blue v. City of New York*, No. 16-CV-09990, 2018 WL 2561023, at *10 (S.D.N.Y. June 4, 2018) ("During the time of the alleged conspiracy, the DA Defendants were acting in their capacity as advocates . . . and thus the DA Defendants are protected by absolute immunity with respect to Plaintiff's § 1983 conspiracy claim.").[8]

V.   Claims Against County John Doe

Notwithstanding the dismissals entered thus far, there remains one party named in the SAC who was purportedly employed by the County: County John Doe. (*See* SAC ¶¶ 46 (explaining that Plaintiff "was informed that one of the officers in the hall was" employed by the Westchester County Department of Public Safety), 54 ("Plaintiff later learned that a county police officer was one of the officers outside his apartment door . . . .")). The County Defendants argue that, while the County John Doe has not been served and is not represented, his dismissal is proper under Federal Rule of Civil Procedure 4(m). (Def. Br. at 15-17). Federal Rule of Civil Procedure 4(m) provides, in pertinent part, that:

---

[8] To the extent Plaintiff complains that the DA Defendants failed to prosecute individuals associated with the MVPD, it is well-established that private citizens do not have standing to bring suit against prosecutors for exercising their discretion in deciding whether—and whom—to prosecute. *See, e.g.*, *Brady v. Schneiderman*, No. 15-CV-09141, 2016 WL 3906737, at *3 (S.D.N.Y. July 13, 2016), *aff'd*, 714 F. App'x 60 (2d Cir. 2018); *Fiorito v. DiFiore*, No. 13-CV-02691, 2014 WL 4928979, at *3 (S.D.N.Y. Oct. 2, 2014).

> If a defendant is not served within 90 days after the complaint is
> filed, the court—on motion or on its own after notice to the
> plaintiff—must dismiss the action without prejudice against that
> defendant or order that service be made within a specified time. But
> if the plaintiff shows good cause for the failure, the court must
> extend the time for service for an appropriate period.

The County Defendants argue, moreover, that dismissal should be with prejudice because the claims for false arrest are not cognizable. (Def. Br. at 17).[9]

The arithmetic is simple. The SAC (the first pleading naming an unknown officer employed by the County) was filed on January 6, 2021, so Plaintiff had until ninety days thereafter—i.e., April 6, 2021—to serve County John Doe. Plaintiff failed to do so, and nothing on the docket or contained in the opposition brief suggests either that Plaintiff: (1) tried to serve County John Doe; or (2) has good cause to excuse his noncompliance. The false arrest claims against County John Doe are, accordingly, dismissed under Rule 4(m).

As for whether dismissal should be with prejudice, the facts pled—and confirmed in Plaintiff's opposition brief—defeat any claim for false arrest under either federal or state law.

"A false arrest claim under Section 1983 'incorporates the elements of the state law where the arrest took place'—here, New York." *Johnson v. City of New York*, No. 18-CV-06256, 2020

---

[9] As with the DA Defendants, the claims for relief are pled in such a way that it is conceivable that Plaintiff intended other claims beyond false arrest—that is the claims for malicious prosecution, conspiracy, and other portions of the broad claim under 42 U.S.C. § 1983—proceed against the County John Doe. (*See generally* SAC ¶¶ 88-92, 102-10). Even if the Court read the claims for relief as broadly as the text of the SAC might suggest—and the Court does not do so—they would be substantively deficient because: (1) there is no factual predicate for the County John Doe's personal involvement in any violation aside from the fact that he was in the hall during the April 2018 arrest; (2) there is no suggestion that the County John Doe initiated a criminal proceeding, as required to state a claim for malicious prosecution; and (3) the pleading comes nowhere near implicating the County John Doe in a conspiracy to violate Plaintiff's civil rights. *See, e.g.*, *Tangreti*, 983 F.3d at 618; *Buari v. City of New York*, 530 F. Supp. 3d 356, 394 (S.D.N.Y. 2021) (stating a § 1983 conspiracy requires "some factual basis supporting a meeting of the minds, such as that defendants entered into an agreement, express or tacit, to achieve the unlawful end, as well as some details of time and place and the alleged effects of the conspiracy" (internal quotation marks omitted)); *Annunziata v. City of New York*, No. 06-CV-07637, 2008 WL 2229903, at *5 (S.D.N.Y. May 28, 2008) (granting summary judgment to detectives on malicious prosecution claim where they "merely arrested plaintiff, and took no part in the subsequent criminal proceedings").

WL 2732068, at *3 (S.D.N.Y. May 26, 2020) (quoting *Youngblood v. City of New York*, No. 15-CV-03541, 2019 WL 6216498, at *5 (S.D.N.Y. Nov. 21, 2019)). Accordingly, to state a claim for false arrest under either regime, Plaintiff must plead "that (1) the defendant intended to confine him, (2) the plaintiff was conscious of the confinement, (3) the plaintiff did not consent to the confinement[,] and (4) the confinement was not otherwise privileged." *Jocks v. Tavernier*, 316 F.3d 128, 134-35 (2d Cir. 2003) (internal quotation marks omitted). "[P]robable cause is an absolute defense to a false arrest claim." *Stansbury v. Wertman*, 721 F.3d 84, 89 (2d Cir. 2013) (quoting *Torraco v. Port Auth. of New York & New Jersey*, 615 F.3d 129, 139 (2d Cir. 2010) (alteration in original)); *see also Ackerson v. City of White Plains*, 702 F.3d 15, 19 (2d Cir. 2012) (noting that "[p]robable cause is a complete defense to an action for false arrest" (internal quotation marks omitted)); *Kilburn v. Vill. of Saranac Lake*, 413 F. App'x 362, 363 (2d Cir. 2011); *Hall v. Salaway*, No. 20-CV-04651, 2021 WL 826169, at *3 (E.D.N.Y. Mar. 3, 2021).

Plaintiff was arrested on April 26, 2018 for both the November 8, 2017 incident and on the bench warrant stemming from his failure to appear in the July 4, 2017 matter. (*See* SAC ¶¶ 38-39, 56, 61-64; *see also* Carey Ex. M). Although the indictment associated with the November 2017 incident was dismissed, Plaintiff pled guilty to a charge in connection with the July 2017 incident in Dkt. No. 17-1817. (*See* Opp. Br. at 6-7; Carey Ex. P). Because Plaintiff pled guilty in Dkt. No. 17-1817, probable cause existed to effectuate the arrest—thereby defeating claims for false arrest. *See, e.g.*, *Gaston v. Ruiz*, No. 17-CV-01252, 2018 WL 3336448, at *4 (E.D.N.Y. July 6, 2018) ("Because an arrest on multiple charges is still only one arrest, *i.e.*, one intrusion into plaintiff's liberty, a conviction on any of the charges for which the arrest was made will preclude a claim of false arrest." (internal citations and quotation marks omitted)); *Horvath v. City of New York*, No. 12-CV-06005, 2015 WL 1757759, at *3 (E.D.N.Y. Apr. 17, 2015) ("[P]laintiff's guilty plea to

disorderly conduct on each criminal docket is conclusive evidence that there was probable cause for his arrests, and therefore his false arrest claims are barred."); *Jones v. Rivera*, No. 13-CV-01042, 2015 WL 8362766, at \*4 (S.D.N.Y. Dec. 7, 2015); *Papeskov v. Brown*, No. 97-CV-05351, 1998 WL 299892, at \*5 (S.D.N.Y. June 8, 1998) (Sotomayor, J.) ("[A] plea of guilty, even to a charge lesser than that for which the plaintiff was arrested, bars a § 1983 action."), *aff'd*, 173 F.3d 845 (2d Cir. 1999); *see also Sealey v. Fishkin*, No. 96-CV-06303, 1998 WL 1021470, at \*4 (E.D.N.Y. Dec. 2, 1998) (Raggi, J.) (granting summary judgment on false arrest claim and noting that "[b]y pleading guilty to disorderly conduct, plaintiff necessarily acknowledged that . . . police could properly take him into custody. Thus, as long as that conviction stands, plaintiff cannot pursue a § 1983 claim for false arrest."); *Bennett v. New York City Hous. Auth.*, 245 A.D.2d 254, 254 (App. Div. 1997) (pleading guilty to disorderly conduct, after being charged with assault and resisting arrest "conclusively established probable cause" on false arrest claim).

Because Plaintiff has pled facts that prevent him from stating a false arrest claim against the County John Doe, that individual is dismissed from this action with prejudice alongside the other County Defendants. *See Black v. Vitello*, 841 F. App'x 334, 336 (2d Cir. 2021) (observing that, notwithstanding Rule 4(m)'s directive that dismissal be "without prejudice," courts may dismiss "with prejudice where '[t]he problem with [the plaintiff's] causes of action is substantive' and 'better pleading will not cure it'" (quoting *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000) (alterations in original)); *Johnson v. Pugh*, No. 11-CV-00385, 2013 WL 3013661, at \*2 (E.D.N.Y. June 18, 2013) ("Because his plea and conviction establish probable cause for his arrest, rendering it privileged, Johnson cannot state a claim for false arrest.").

VI.   Leave to File a Third Amended Complaint[10]

Plaintiff, in his opposition brief, devotes two sentences to a request for leave to amend; once in the body of the submission, and once at the end. (Opp. at 7, 15). "Plaintiff's request to amend, contained solely in [his] opposition memorandum, is procedurally defective since a bare request to amend a pleading contained in a brief, which does not also attach the proposed amended pleading is improper under Fed. R. Civ. P. 15." *Zottola v. Eisai Inc.*, No. 20-CV-02600, 2021 WL 4460563, at *11 (S.D.N.Y. Sept. 29, 2021) (quoting *Oden v. Boston Sci. Corp.*, 330 F. Supp. 3d 877, 904 n.4 (E.D.N.Y. 2018)). The nature of this request is especially improper where, as here, Plaintiff has had ample opportunity to amend his pleading. Indeed, before the County Defendants filed their motion, the Court granted Plaintiff leave to file a Third Amended Complaint. (*See* Mar. 3, 2021 Min. Entry; Doc. 47). No amended pleading was filed.

The Second Circuit has instructed that "a *pro se* plaintiff 'should be afforded every reasonable opportunity to demonstrate that he has a valid claim.'" *Guerra v. Jones*, 421 F. App'x 15, 17 (2d Cir. 2011) (quoting *Matima v. Celli*, 228 F.3d 68, 81 (2d Cir. 2000)). "However, '[w]here it appears that granting leave to amend is unlikely to be productive,'" it need not be permitted. *Mallek v. Allstate Indem. Co.*, No. 17-CV-05949, 2018 WL 3629596, at *2 (E.D.N.Y. July 31, 2018) (quoting *Lucente v. Int'l Bus. Machs. Corp.*, 310 F.3d 243, 258 (2d Cir. 2002) (alteration in original)). Therefore, "[l]eave to amend, though liberally granted, may properly be denied for undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc." *Vasquez v. Yadali*, No. 16-CV-

---

[10] The County Defendants did not address this request in their reply submission. (*See generally* Reply Br.). The Court must, however, consider the application. *See Goney v. SuttonPark Cap. LLC*, No. 21-1101, 2021 WL 5071867, at *2 (2d Cir. Nov. 2, 2021).

00895, 2020 WL 6384067, at *1 (S.D.N.Y. Oct. 30, 2020) (quoting *Tapia v. Huaquechula Rest. Corp.*, No. 18-CV-10771, 2020 WL 3893314, at *2 (S.D.N.Y. July 10, 2020) (alteration in original)). Deciding such a motion falls within the discretion of the Court. *Forman v. Davis*, 371 U.S. 178, 182 (1962) ("Of course, the grant or denial of an opportunity to amend is within the discretion of the District Court . . . .").

Without any information as to the substance of the proposed amendments, the Court cannot evaluate the propriety of the contemplated modifications. This is reason sufficient to deny the request. *See Coleman v. brokersXpress, LLC*, 375 F. App'x 136, 137 (2d Cir. 2010) (noting that the plaintiff "made no specific showing as to how he would cure the defects that persisted if given a second opportunity to amend"); *Altayyar v. Etsy, Inc.*, 731 F. App'x 35, 38 n.4 (2d Cir. 2018) ("When a plaintiff does not advise the district court how the complaint's defects would be cured . . . it is not an abuse of discretion to implicitly deny leave to amend." (internal quotation marks omitted)); *Tyk v. Surat*, No. 13-CV-01532, 2015 WL 13214925, at *1 (E.D.N.Y. July 23, 2015) ("First of all . . . plaintiff has failed to provide a proposed Fourth Amended Complaint. That is reason enough to deny the motion." (collecting cases)); *Reed v. Hales*, No. 05-CV-06497, 2006 WL 3207661, at *1 (W.D.N.Y. Nov. 3, 2006) (denying the request to file an amended complaint because the application was conclusory and offered no explanation as to how "the underlying facts or circumstances relied upon in seeking leave to amend are a proper subject of relief").

In light of the foregoing, Plaintiff's two-sentence request to file an amended pleading, his failure to file a Third Amended Complaint after being granted leave to do so, and the lack of specific detail as to why the SAC should be amended with respect to the County Defendants, compel a conclusion that the request be denied as to the County Defendants with prejudice.

## CONCLUSION

For the foregoing reasons, the County Defendants' motion to dismiss is GRANTED in its entirety. The Clerk of the Court is respectfully directed to terminate the motion sequence pending at Doc. 65 and terminate the County, WCDAO, DA Scarpino, ADA Thomas, ADA Marcarchuk, ADA Knowlton, ADA Buitrago, ADA Wager, and one John Doe Defendant—referred to herein as the County John Doe—from the docket and mail a copy of this Memorandum Opinion and Order to Plaintiff at 1435 Bedford Street, Apt. 14f, Stamford, Connecticut 06905.

The case remains active, however, with respect to the other eight Defendants.

**SO ORDERED:**

Dated:    White Plains, New York
          December 1, 2021

_____
PHILIP M. HALPERN
United States District Judge